# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  GENERAL PRINCIPLES APPLICABLE TO THIS MOTION . . . . . . . . . . . . . . . 2

      A.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    ADJUSTMENT OF STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    RELIEF AVAILABLE UNDER THE MANDAMUS ACT AND
            THE ADMINISTRATIVE PROCEDURE ACT . . . . . . . . . . . 4

IV.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED . . . . . 5

      B.    VENUE IS IMPROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    An Alien's Residence May Not Be Used to Establish Proper Venue . . . . 6

            2.    No Acts or Omissions Occurred In This District . . . . . . . . . . . . . . . . . . 6

            3.    The Named Defendants Do Not Reside in this Judicial District . . . . . . . 7

      C.    RELIEF IS NOT AVAILABLE UNDER THE APA . . . . . . . . . . . . . . . . . . . 7

            1.    Plaintiff Seeks to Compel Multiple Actions . . . . . . . . . . . . . . . . . . . . . 7

            2.    Compelling Action By USCIS Would Necessarily Interfere
                  With the FBI's Discretion . . . . . . . . . . . 8

            3.    The Delay Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  a.    A Rule of Reason Governs the Agency Decisions at Issue . . . . . . 8

                  b.    There Is No Congressionally Mandated Timetable . . . . . . . . . . . 9

i

**TABLE OF CONTENTS** (continued)

c.    The Impact of the Delay is Minimal in Comparison
with the National Interest in Complete and Thorough
Background Checks . . . . . . . . 11

d.    The Effect of Expedition Would Intrude on Agency
Discretion and Prejudice Other "First In Line" Applicants . . . . . 12

e.    The Agencies are Exercising Every Effort to Address
the Delay . . . . . . . . 15

C.    MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S
CLAIM IS NOT CLEAR AND CERTAIN . . . . . . . . . . 16

**V.    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alkenani v. Barrows,
    356 F. Supp. 2d 652 (N.D. Tex. 2005) .......................................................... 15

Allied Chemical Corp. v. Daiflon, Inc.,
    449 U.S. 33 (1980) ...................................................................................... 5

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .................................................................................... 2

In re Barr Laboratories,
    930 F.2d 72 (D.C. Cir. 1991) .................................................................. 9, 14

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) .................................................................. 13

Brunette Machine Works, LTD. v. Kockum Industries, Inc.,
    406 U.S. 706, 714 (1972) ............................................................................ 6

Califano v. Sanders,
    430 U.S. 99 (1977) ...................................................................................... 4

Celotex Corp. v. Cattrett,
    477 U.S. 317 (1986) .................................................................................... 2

Cheney v. United States District Court for the District of Columbia,
    542 U.S. 367 (2004) .................................................................................... 5

Cordoba v. McElroy,
    78 F. Supp. 2d 240 (S.D.N.Y. 2000) ........................................................ 10

Dmitriev v. Chertoff,
    2007 WL 1319533 (N.D. Cal. May 4, 2007) ............................................. 5

Eldeeb v. Chertoff, et al.,
    2007 WL 2209231 (M.D. Fla. July 30, 2007) ...................... 8, 9, 10, 11, 13, 15

Espin v. Gantner,
    381 F. Supp. 2d 261 (S.D.N.Y. 2005) ...................................................... 15

Exxon Corp. v. FTC,
    588 F.2d 895, 899 (3rd Cir. 1978) .............................................................. 6

iii

## FEDERAL CASES (continued)

Fleifel v. Vessa,
      503 F. Supp. 129, 130 (W.D. Va. 1980) ............................................................ 6

Fraga v. Smith,
      607 F. Supp. 517 (D. Or. 1985) .................................................................... 13

Franz v. United States,
      591 F. Supp. 374, 377 (D.D.C. 1984) ............................................................. 7

Freeman v. Arpaio,
      125 F.3d 732 (9th Cir. 1997) ...................................................................... 2

Galveston, Harrisburg and San Antonio Railway Co. v. Gonzales,
      151 U.S. 496 (1894) ................................................................................ 6

Heckler v. Ringer,
      466 U.S. 602 (1984) ................................................................................ 5

INS v. Miranda,
      459 U.S. 14 (1982) ................................................................................ 10

Kildare v. Saenz,
      325 F.3d 1078 (9th Cir. 2003) ................................................................ 5, 16

Konchitsky v. Chertoff,
      2007 WL 2070325 (N.D. Cal. July 13, 2007) ...................................................... 5

Li v. Chertoff,
      432 F. Supp. 2d 1172 (S.D. Cal. 2007) ........................................................... 8

Liberty Fund, Inc. v. Chao,
      394 F. Supp. 2d 105 (D.D.C. 2005) ........................................... 9, 11, 12, 13, 15

Manzoor v. Chertoff,
      472 F. Supp. 2d 801 (E.D. Va. 2007) ............................................................ 14

Marincas v. Lewis,
      92 F.3d 195 (3d Cir. 1996) ...................................................................... 10

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
      336 F.3d 1094 (D.C. Cir. 2003) .................................................................. 14

iv

## FEDERAL CASES (continued)

Nelson v. Kleppe,
    457 F. Supp. 5 (D. Idaho 1976) ........................................................................ 5

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55 (2004) ................................................................................... 4, 7

Nova Stylings Inc. v. Ladd,
    695 F.2d 1179 (9th Cir. 1983) ......................................................................... 5

Orkin v. Taylor,
    487 F.3d 734 (9th Cir. 2007) .......................................................................... 9

Patil v. Mueller, et al.,
    2007 WL 1302752 (E.D. Va. Apr. 30, 2007) ........................................................ 12

Prudencio v. Hanselmann,
    178 F. Supp. 887 (D. Minn. 1959) ................................................................... 6

Razaq v. Poulos,
    2007 WL 61884 (N.D. Cal. Jan. 8, 2007) ......................................................... 10

Rockbridge v. Lincoln,
    449 F.2d 567 (9th Cir. 1971) .......................................................................... 4

Reuben H. Donnelley Corp. v. FTC,
    580 F.2d 264, 267 (7th Cir. 1978) .................................................................. 7

Safadi v. Howard,
    466 F. Supp. 2d 696 (E.D. Va. 2006) ............................................................. 12

Saleh v. Ridge,
    367 F. Supp. 2d 508 (S.D.N.Y. 2005) ......................................................... 14, 15

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950) .................................................................................... 5

Sozanski v. Chertoff,
    2006 WL 4516968 (N.D. Tex. Dec. 11, 2006) ................................................... 8

Staacke v. U.S. Department of Labor,
    841 F.2d 278 (9th Cir. 1988) .......................................................................... 5

## FEDERAL CASES (continued)

Sze v. INS,
      1997 WL 446236 (N.D. Cal. Jul. 24, 1997) .................................................................. 12

Takkallapalli v. Chertoff,
      487 F. Supp. 2d 1094 (W.D. Mo. 2007) .......................................................... 8

Telecomm. Research and Action Ctr. v. FCC,
      750 F.2d 70 (D.C. Cir. 1984) ................................................................. 8, 11

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
      435 U.S. 519 (1978) ........................................................................... 14

Walters v. Reno,
      145 F.3d 1032 (9th Cir. 1998) .............................................................. 13

Williams v. United States,
      704 F.2d 1222 (11th Cir. 1983) ........................................................... 6

Wright v. Califano,
      587 F.2d 345 (7th Cir. 1978) ........................................................... 13, 14

Wright v. City of Roanoke Redevelopment and Housing,
      479 U.S. 418 (1987) ........................................................................... 9

Yan v. Mueller,
      No. H-07-0313, 2007 WL. 1521732 (S.D. Tex. May 24, 2007) .............................. 8, 14

## FEDERAL STATUTES & REGULATIONS

5 U.S.C. § 551(13) .................................................................................... 4

5 U.S.C. § 555(b) .................................................................................... 13

5 U.S.C. § 701, et seq. ............................................................................. 4

5 U.S.C. § 701(a)(2) ................................................................................. 4

5 U.S.C. § 706(1) .................................................................................. 4, 13

6 U.S.C. § 271(b) .................................................................................... 3

6 U.S.C. § 271(b)(5) ................................................................................. 5

**FEDERAL STATUTES & REGULATIONS** (continued)

6 U.S.C. § 551(d) .......................................................................................... 3

6 U.S.C. § 557 ............................................................................................... 5

8 U.S.C. § 1105(a) ......................................................................................... 3

8 U.S.C. § 1105(b)(1) ..................................................................................... 9

8 U.S.C. § 1255 .............................................................................................. 3

8 U.S.C. § 1255(a) ..................................................................................... 3, 9

8 U.S.C. § 1571 .............................................................................................. 9

28 U.S.C. § 1391(e) ....................................................................................... 6

28 U.S.C. § 1391(e)(1) ................................................................................... 7

28 U.S.C. § 1391(e)(3) ................................................................................... 6

28 U.S.C. § 2201 ............................................................................................ 5

Immigration Services and Infrastructure Improvements Act of 2000,
    Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000) ......................... 10

Intelligence Reform and Terrorism Prevention Act of 2004,
    Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) .................................. 7

8 C.F.R. § 245 et seq ...................................................................................... 3

**RULES**

Fed. R. Civ. P. 25(d)(1) ................................................................................... 1

Fed. R. Civ. P. 56(c) ....................................................................................... 2

**REPORTS**

The 9/11 Commission Report,
    2004 WL 1634382 (July 22, 2004) ................................................................ 11

vi

## TREATISES

6A WEST'S FEDERAL PRACTICE MANUAL § 7437 ................................................................ 6

6A WEST'S FEDERAL PRACTICE MANUAL § 7446 ................................................................ 6

1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MELANIE L. PROCTOR (CSBN 228971)
   Melanie.Proctor@usdoj.gov
4  Assistant United States Attorney

5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
6      Telephone: (415) 436-6730
       FAX: (415) 436-6927
7
   Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN JOSE DIVISION
11
   ALEXEY STEPANOV,                    )    No. C07-2492 RS
12                                      )
                       Plaintiff,       )
13                                      )
           v.                           )
14                                      )
   MICHAEL CHERTOFF, Secretary,         )    DEFENDANTS' MOTION FOR
15 Department of Homeland Security; PETER )  SUMMARY JUDGMENT
   D. KEISLER,* United States Attorney  )
16 General; EMILIO T. GONZALEZ, Director,)   Date:        October 24, 2007
   U.S. Citizenship and Immigration Services; )  Time:      9:30 a.m.
17 F. GERARD HEINAUER, Director,        )    Courtroom:   4, 5th Floor
   Nebraska Service Center, U.S. Citizenship )
18 and Immigration Services; and ROBERT S. )
   MUELLER, III, Director, Federal Bureau of )
19 Investigation,                       )
                                        )
20                     Defendants.      )
                                        )
21 ─────────────────────────────────────)

22                        **I. INTRODUCTION**

23        Plaintiff Alexey Stepanov ("Plaintiff") asks this Court to issue a writ of mandamus,

24 compelling Defendants reach a decision on his application for adjustment of status.  He also asks

25 the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to

26 grant relief under the Declaratory Judgment Act.  Plaintiff's claims must fail.  Plaintiff's application

27 remains pending because his name check is not yet complete.  The facts are undisputed, and

28 Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants respectfully ask

1    this Court to grant their motion for summary judgment.

2                              **II.   BACKGROUND**

3           On June 17, 2005, Plaintiff filed an I-485 application for adjustment of status at the

4    California Service Center.  See Declaration of F. Gerard Heinauer, p. 2 ¶ 3 (attached as Exh. A).

5    On March 9, 2007, Plaintiff's application was transferred to the Nebraska Service Center ("NSC").

6    Id.  Plaintiff's application is ready to be adjudicated except for his pending background and security

7    check, and the absence of any available visas until October 1, 2007.  Id., p. 5 ¶ 9.  Plaintiff filed the

8    instant Complaint on May 9, 2007.  On July 10, 2007, Defendants answered the Complaint.  On

9    August 3, 2007, the Court adopted the parties' proposed schedule for filing cross-motions for

10   summary judgment.

11          **III.   GENERAL PRINCIPLES APPLICABLE TO THIS MOTION**

12          A.     LEGAL STANDARD

13          Summary judgment is appropriate when the "pleadings, depositions, answers to

14   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

16   of law." Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidence for a

17   reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477

18   U.S. 242, 248-49 (1986).  A fact is material if the fact may affect the outcome of the case.  See id.

19   at 248.  The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the

20   court may not weigh the evidence or make credibility determinations, and is required to draw all

21   inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732,

22   735 (9th Cir. 1997).  A principal purpose of the summary judgment procedure is to identify and

23   dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

24   ///

25   ///

26   ///

27   ///

28

B.    ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See 8 C.F.R. § 245 et seq.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. See Exh. A, pp. 4-5 ¶ 11. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation [("FBI")] and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. See Exh. A, p. 4-5 ¶ 11.

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

The FBI's name check process is quite complex. <u>See</u> Declaration of Michael Cannon., p. 2 ¶ 4. Name checks are performed at the request of a variety of organizations, including the federal judiciary, friendly foreign police and intelligence agencies, and state and local governments. <u>Id.</u> When the FBI conducts a name check, the name is checked against the FBI's Universal Index, in a four-stage process. <u>Id.</u>, p. 5 ¶ 11. Generally, the FBI employs a first-in, first-served protocol. <u>Id.</u>, p. 7, ¶ 19. However, when an applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. <u>Id.</u> USCIS determines which name checks are to be expedited. <u>Id.</u>; <u>see also</u> USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. C). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Exh. B, p. 7 ¶ 19.

As discussed in the Cannon Declaration,  the FBI processed more than 3.4 million name checks during fiscal year 2006. <u>Id.</u>, p. 6 ¶ 16.   The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists.  This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. <u>Id.</u>, p. 6 ¶ 17. A variety of factors play into processing times, including "hits," common names, and expedited name checks. <u>Id.</u>, p. 7 ¶ 20.

C.     RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, <u>et seq.</u>, is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13).  Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55 (2004); <u>Rockbridge v. Lincoln</u>, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. <u>Califano v. Sanders</u>, 430 U.S.

99, 107 (1977); <u>Staacke v. U.S. Department of Labor</u>, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. <u>Staacke</u>, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. <u>See Cheney v. United States District Court for the District of Columbia</u>, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

<u>Kildare v. Saenz</u>, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "'mandamus does not lie to review the discretionary acts of officials.'" <u>See Nova Stylings Inc. v. Ladd</u>, 695 F.2d 1179, 1180 (9th Cir. 1983), quoting <u>Nelson v. Kleppe</u>, 457 F. Supp. 5, 8 (D. Idaho 1976).

## IV.  ANALYSIS

### A.    ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED

This Court has recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. <u>See</u> 6 U.S.C. §§ 271(b)(5), 557. Accordingly, the only relevant Defendant here is Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security, and all other Defendants should be dismissed. <u>See Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); <u>Dmitriev v. Chertoff</u>, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007).

///

1

B.     VENUE IS IMPROPER

2      In their Answer, Defendants denied that venue is proper in this District.  Proper venue is

3  prescribed at 28 U.S.C. § 1391(e), which reads as follows in pertinent part:

4      A civil action in which a defendant is an officer or employee of the United States or
       any agency thereof acting in his official capacity or under color of legal authority,
5      or an agency of the United States, or the United States, may, except as otherwise
       provided by law, be brought in any judicial district in which (1) a defendant in the
6      action resides, (2) a substantial part of the events or omissions giving rise to the
       claim occurred, or a substantial part of the property that is the subject of the action
7      is situated, or (3) the plaintiff resides if no real property is involved in the action.

8  28 U.S.C. § 1391(e) (emphasis added).  As explained below, because Plaintiff is not a citizen of the

9  United States, there is no basis for venue in this judicial district.

10             1.     An Alien's Residence May Not Be Used to Establish Proper Venue

11     Plaintiff states in his Complaint that venue is proper in this judicial district because they

12 reside in this judicial district.  Complaint, p. 3, ¶ 9.  To determine proper venue by way of Plaintiff's

13 residence, such residence is determined at the time of commencing the action.  28 U.S.C.

14 § 1391(e)(3); Exxon Corp. v. FTC, 588 F.2d 895, 899 (3rd Cir. 1978); 6A WEST'S FEDERAL

15 PRACTICE MANUAL § 7437.  Plaintiff's residence appears to be in Sunnyvale, which is in this

16 judicial district.  However, Plaintiff is not a citizen of the United States.  Courts have consistently

17 recognized that an alien's residence in the United States cannot be used for venue purposes.  See

18 Brunette Machine Works, LTD. v. Kockum Industries, Inc., 406 U.S. 706, 714 (1972) ("suits against

19 aliens are wholly outside the operation of all the federal venue laws"); Galveston, Harrisburg and

20 San Antonio Railway Co. v. Gonzales, 151 U.S. 496 (1894) (diversity); Williams v. United States,

21 704 F.2d 1222, 1225 (11th Cir. 1983); Fleifel v. Vessa, 503 F. Supp. 129, 130 (W.D. Va. 1980) ("an

22 alien has no residence in the United States for venue purposes"); Prudencio v. Hanselmann, 178 F.

23 Supp. 887 (D. Minn. 1959); 6A WEST'S FEDERAL PRACTICE MANUAL § 7446.  Because

24 Plaintiff is an alien, Complaint, p. 1, ¶ 1, his residence cannot be used to establish proper venue.

25             2.     No Acts or Omissions Occurred In This District

26     Plaintiff has failed to identify any non-self generating event that occurred in this district.  He

27 admits, as he must, that he filed his application with the California Service Center.  Complaint, p.

28 4 ¶ 11.  The California Service Center is located in Laguna Nigel, California, and thus, is not in this

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
C07-2492 RS                                  6

1    District.   Plaintiff  also  admits  that  his  application  has  been  transferred  to  Nebraska.   Id.

2    Accordingly, the alleged acts and omissions giving rise to the claim did not occur in this District.

3              3.    The Named Defendants Do Not Reside in this Judicial District

4    Civil actions against officers or employees of the United States, or of any agency thereof,

5    acting in their "official capacity" or "under color of legal authority," may be brought in any district

6    in which the defendant resides.  28 U.S.C. § 1391(e)(1).  Generally, for venue purposes, residence

7    of the federal officer is the place where he or she performs his or her official duties.  Reuben H.

8    Donnelley Corp. v. FTC, 580 F.2d 264, 267 (7th Cir. 1978).

9    In the case at hand, Plaintiff has named five defendants.  See Complaint, pp. 2-3 ¶¶ 3-7.  The

10   Department of Homeland Security and the FBI are located in Washington, D.C, and Michael

11   Chertoff, Emilio T. Gonzalez, Peter D. Keisler, and Robert S. Mueller perform their official duties

12   in the District of Columbia.  Therefore, those Defendants' residence lies in the District of Columbia.

13   See, e.g., Franz v. United States, 591 F. Supp. 374, 377 (D.D.C. 1984) (venue for equitable claims

14   asserted against the Attorney General was proper in the District of Columbia).   The remaining

15   Defendant, F. Gerard Heinauer, performs his official duties in Nebraska.  Accordingly, Plaintiff's

16   complaint should be dismissed for being brought in the improper venue.

17        C.    RELIEF IS NOT AVAILABLE UNDER THE APA

18              1.    Plaintiff Seeks To Compel Multiple Actions

19   The United States Supreme Court's decision in Southern Utah Wilderness Alliance mandates

20   against granting relief.   There, the Court determined that the APA's reference to "a failure to act"

21   is limited to a discrete action that the agency is required to take.  542 U.S. at 64.  Here, Plaintiff asks

22   the Court to compel multiple actions, including whether USCIS requests an expedited name check,

23   and the pace at which USCIS issues a decision once his name check is complete.  See Complaint,

24   p. 5, Prayer for Relief.  USCIS has exercised its discretion to determine which cases merit being

25   moved to the head of the name check line for expedited processing.  See Exh. C.  Plaintiff can point

26   to no law requiring USCIS to request that the FBI expedite his name check, or setting a time frame

27   upon the FBI's exercise of discretion in conducting the investigation. Furthermore, it is possible that

28   upon receiving the results of his name check, USCIS will need to conduct further investigation.

1    Accordingly, Plaintiff's request for relief necessarily would impact multiple actions. As such, relief

2    is not available under the APA.

3        2.    Compelling Action By USCIS Would Necessarily Interfere With the FBI's
              Discretion

4

5        Numerous courts have recognized the FBI's discretion "in determining the timing for

6    conducting the many name check requests that it receives and the manner in which to conduct those

7    checks." Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; see

8    also Takkallapalli v. Chertoff, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where

9    delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial

10   intervention."); Li v. Chertoff, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that

11   USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485

12   applications."); Sozanski v. Chertoff, et al., No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex.

13   Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform

14   name checks in adjustment of status cases). Compelling USCIS to process Plaintiff's application

15   in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain

16   manner. Accordingly, Plaintiff essentially seeks to compel a discretionary action, and relief is

17   unavailable under the APA

18       3.    The Delay is Reasonable

19       Even if the actions at issue were not discretionary, Plaintiff has failed to that the two year

20   delay at issue here is unreasonable. To determine whether the delay is egregious, such that relief

21   under the APA is warranted, several circuits have adopted the six-part test first articulated in

22   Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC").

23       a.    A Rule of Reason Governs the Agency Decisions at Issue

24       The first TRAC factor requires an agency to govern decisions with a rule of reason. TRAC,

25   750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the

26   extensive background check that is required for national security and public safety, and the limited

27   resources available to it, the FBI is proceeding in an orderly fashion with the completion of name

28   checks in the order in which they are received. See Eldeeb v. Chertoff, No. 07cv236-T-17EAJ,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
C07-2492 RS                                    8

1    2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007).  Once the FBI name check in this case has been

2    completed, USCIS will promptly adjudicate Plaintiff's application.  Exh. A, p. 7 ¶ 15.  Further,

3    USCIS regularly monitors the case to determine whether the name check remains pending.  Id., p.

4    9 ¶ 20.  Public safety requires USCIS to make certain that the background checks have been

5    completed and any outstanding issues resolved before it reaches a decision.

6         In Plaintiff's case, this means that USCIS must await the results of the FBI name check

7    before reaching a decision on his I-485 application, and the FBI must be given time to perform an

8    accurate and thorough check.  Exh. A, pp. 6-7  ¶14.  The FBI's "first in, first out" processing

9    approach is a method that is "deserving of deference."  Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d

10   105, 118 (D.D.C. 2005); see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency

11   is in a unique and authoritative position to view its projects as a whole, estimate the prospects for

12   each, and allocate its resources in the optimal way.").

13                    b.     There Is No Congressionally Mandated Timetable

14        The second TRAC factor does not apply to the present case because there is neither a

15   statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate

16   the application within a certain amount of time.  Contra Intelligence Reform and Terrorism

17   Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring

18   Government personnel security checks to be completed within a certain time frame).  Additionally,

19   Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS

20   should conduct its adjudications.  Congress has, however, required that USCIS conduct certain

21   criminal and national security background checks to ensure eligibility for adjustment of status.  See

22   8 U.S.C. §§ 1105(b)(1), 1255(a).

23        Defendants acknowledge that Congress, at 8 U.S.C. § 1571, observed that in most instances,

24   applications for immigration benefits should not take more than 180 days to adjudicate.  However,

25   the statute expresses a "sense of Congress," and is not a mandate.  Id.   The language in § 1571 is

26   merely precatory, and does not impose a deadline on Defendants.  See Wright v. City of Roanoke

27   Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not

28   create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress'

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
C07-2492 RS                                    9

provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in issues involving national security. See Exh B, pp. 6-7 ¶¶ 16-18. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2; see also Exh. B, pp. 2-5 ¶¶ 5-12. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. Eldeeb, 2007 WL 2209231, at *2. Of those remaining checks, 22 percent are returned within two months. Id. The FBI processes name checks chronologically, based on the date the name check is submitted. Id.

1    Before September 11, 2001, the FBI processed approximately 2.5 million name checks per

2    year, checking only the "main" files. Id. at *3. In Fiscal Year 2006, the FBI processed over 3.4

3    million name checks. Id. In addition, the FBI began checking "reference" files. Id. This expansion

4    of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit

5    2.7 million name check requests, for those with pending applications for immigration benefits. Id.

6    at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks;

7    because the FBI processes name checks chronologically, the processing of regular name checks has

8    been delayed. Id. Here, Plaintiff's name check was submitted approximately eighteen months after

9    the FBI received the 2.7 million resubmissions. Exh. B, p. 8 ¶ 22. Name checks that exceed the two

10    month window require personal attention of the processing agent. Eldeeb, 2007 WL 2209231, at

11    *5. The FBI currently processes approximately 340,000 name checks per year by hand. Id. Thus,

12    it is evident that there are substantial factors contributing to the backlog.

13                    c.    The Impact of the Delay is Minimal in Comparison with the National
14                          Interest in Complete and Thorough Background Checks

15    The third TRAC factor is the delay's impact on human health, welfare, and economic harm

16    to Plaintiff. This factor's analysis overlaps with the analysis of the fifth TRAC factor, the nature

17    and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty Fund, 394 F.

18    Supp. 2d at 118. Plaintiff may be inconvenienced by the delay in adjudication, but this individual

19    interest cannot outweigh Defendants' interests in fully and accurately completing each name check.

20    Security background checks for individuals seeking immigration benefits is a key component to our

21    nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22,

22    2004) (finding that, "had the immigration system set a higher bar for determining whether

23    individuals are who or what they claim to be....it could have potentially have excluded, removed,

24    or come into further contact with several hijackers who did not appear to meet the terms for

25    admitting short-term visitors.").

26    In most cases, the adverse impact caused by the delay is not substantial. Applicants for

27    adjustment of status who have pending applications may apply for and obtain employment

28    authorization for the entire time the application is pending. Additionally, most applicants may also

apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Exh. A, p. 12 ¶ 25. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." Liberty Fund, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." Safadi v. Howard, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." Patil v. Mueller, et al., No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations). Thus, when balancing the agencies' interests in defending against threats to national security against the Plaintiff's interest in adjudication, the interests of the nation must prevail.

        d.      **The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants**

The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty Fund, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

In Liberty Fund, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115. Applying the TRAC factors, the court held that without a statutory timetable governing agency action, the TRAC factor, "that weighs most heavily under the circumstances of the case is the fourth

1   factor - the effect of granting relief on the agency's competing priorities." Id. at 116.  The court

2   reasoned that the agency's "first in, first out processing" was deserving of deference because any

3   grant of relief to petitioners would result in no net gain - petitioners would move to the front of the

4   queue at the expense of other similarly situated applicants.  After examining the agency's priorities,

5   growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus

6   relief was not warranted.  Id. at 119.

7          Just as in Liberty Fund, Plaintiff's argument of unreasonable delay in this case must also fail.

8   Plaintiff asks this Court to find that USCIS has not adjudicated his I-485 application in a reasonable

9   period of time.  Plaintiff's legal arguments under Sections 555(b) and 706(1) of the APA fail

10  because adjudication has not been unreasonably delayed.  Contrary to Plaintiff's pleadings, the

11  existence of administrative delays does not mean that such delays are unreasonable.  Courts have

12  noted that "the reasonableness of such delays must be judged in light of the resources that Congress

13  has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the

14  applicants' interests."  Fraga v. Smith, 607 F.  Supp. 517, 521 (D. Or. 1985) (citing Wright v.

15  Califano, 587 F.2d 345, 353 (7th Cir. 1978)).  Indeed, "[t]he passage of time alone is rarely enough

16  to justify a court's intervention in the administrative process."  Fraga, 607 F. Supp. at 521.

17         Similarly, the effect of expediting delayed agency action under the fourth TRAC factor

18  would unquestionably impinge upon agency activities and responsibilities of a higher priority.  Such

19  an order would intrude on the agency's discretion and ability to fulfill its highest priority of

20  safeguarding the nation.  See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir.

21  2002) ("the government's interest in preventing terrorism is not only important but paramount"); see

22  also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the

23  administration of its immigration laws and in preventing [immigration related] document fraud are

24  likewise considerable.")

25         Delays in the processing of FBI name checks arise for a variety of reasons.  First, USCIS is

26  not the only agency that engages in the FBI name check program.   Notably, the FBI and USCIS

27  processes' do not occur in vacuums.  Any requirement that the FBI or USCIS process Plaintiff's

28  name check or application within a particular time limit will have the unfortunate side effect of

1   slowing the processing for other applicants who are also awaiting action on their applications for

2   immigration benefits. Here, Plaintiff's application is under adjudication at the NSC. See Exh. A,

3   pp. 1-2, ¶ 3. As of September 2007, the NSC had approximately 74,000 employment-based

4   adjustment applications pending, of which over 17,000 are still awaiting completion of the name

5   checks. Id., pp. 8-9 ¶ 20. The NSC regularly monitors cases with pending name checks to identify

6   those in which a response from the FBI has been received. Id., p. 4 ¶ 9.

7       The requests generally processed out-of-order are cases expedited by USCIS for specific

8   health, welfare, or economic reasons. Exh. C. Absent these compelling reasons, moving some

9   individuals to the front of the queue would simply move that group ahead of others who also had

10  been waiting, resulting in no net gain in processing. See In re Barr Lab., 930 F.2d at 75; Mashpee

11  Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore,

12  ordering Plaintiff's case to the front of the line sets the precedent that the more litigious applicants

13  are most likely to move to the top of the pile at the expense of other applicants that have waited even

14  longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801, 809

15  (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of

16  petitioner's claims would only, "encourage other applicants to file suit to receive expedited

17  treatment rather than wait their turn in line.").

18      Moreover, the courts have been cautioned against "engrafting their own notions of proper

19  procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee

20  Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). Here,

21  where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the

22  part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable

23  dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the

24  impact of the delays on the applicants' interests." Wright, 587 F.2d at 353. The complexity of

25  agency investigations, as well as the extent that the individual applicants contributed to delays, also

26  enter into a court's deliberations. See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005).

27  An agency's good faith efforts to address delays militate against a finding of unreasonableness. See

28  Wright, 587 F.2d at 345.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
C07-2492 RS                          14

1

e.    The Agencies are Exercising Every Effort to Address the Delay

2    The sixth and last <u>TRAC</u> factor provides that a court need not find impropriety to hold that

3    an agency action is unreasonably delayed.  Conversely, "the good faith of the agency in addressing

4    the delay weighs against mandamus." <u>Liberty Fund</u>, 394 F. Supp. 2d at 120. Here, the delay is due

5    to the pendency of Plaintiff's FBI name check. <u>See</u> Exh. A, p. 4 ¶ 9. As discussed above, the FBI

6    is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure

7    that once the name check is complete, USCIS can complete adjudication.  Thus, balancing the

8    <u>TRAC</u> factors demonstrates the reasonableness of the Government's actions.

9    In addition, Plaintiff has failed to show that USCIS will refuse to adjudicate her application

10   once the FBI completes the requisite name check. <u>See</u> <u>Saleh</u>, 367 F. Supp. 2d at 513; <u>see also</u>

11   <u>Eldeeb</u>, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was

12   refusing to act on his application).  On the contrary, the FBI and USCIS are taking active steps

13   towards completing the background checks for adjudication of her application.  Specifically, USCIS

14   is making every effort to complete adjudication as soon as the name check is completed.  Exh. A.,

15   p. 7 ¶ 15.

16   Many courts have refused to grant relief under the APA, even when naturalization or other

17   immigration applications were pending for significant time periods.  <u>See</u> <u>Saleh</u>, 367 F. Supp. 2d at

18   513 (finding five-year delay not in violation of APA in part in light of volume of applications);

19   <u>Espin v. Gantner</u>, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable

20   because of government's limited resources and substantial caseload); <u>Alkenani v. Barrows</u>, 356 F.

21   Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context

22   because of need to wait for completion of FBI investigation).  Just as in these cases, Plaintiff in the

23   present case insists that this Court find an unreasonable delay based solely on the amount of  time

24   passed since receipt of his application.  However, the law requires a more in-depth analysis for

25   mandamus relief under the APA.  A review of the six <u>TRAC</u> factors shows that Defendants have not

26   unreasonably delayed actions pertaining to Plaintiff's adjustment of status application.

27   ///

28   ///

C.    MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078.    Here, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified.  Furthermore, USCIS has exercised its discretion in determining which name checks should be expedited.  Exh. C. Plaintiff's case meets none of these criteria. Accordingly, the Court should decline to issue a writ of mandamus.

## V.  CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss all Defendants except Defendant Chertoff, and grant the remaining Defendant's motion for summary judgment as a matter of law.

Dated: September 19, 2007                          Respectfully submitted,

                                                  SCOTT N. SCHOOLS
                                                  United States Attorney


                                                  _____/S/_____
                                                  MELANIE L. PROCTOR
                                                  Assistant United States Attorney
                                                  Attorney for Defendants

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
C07-2492 RS                          16