Judith Michaels Morrow, Esq. (CA SBN 115109)
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Tel. (415) 781-5744
Fax (415) 392-8208
Email: judithmorrow@pacbell.net

Attorney for Plaintiff
Alexey STEPANOV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DISTRICT

| | |
|---|---|
| Alexey Stepanov,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Michael Chertoff, Secretary, Department of Homeland Security; Peter Keisler, Acting Attorney General; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; F. Gerard Heinauer, Director, Nebraska Service Center, United States Citizenship and Immigration Services, Robert S. Mueller, III, Director, Federal Bureau of Investigation<br><br>　　　　Defendants. | Case No.: C 07-02492 RS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Magistrate Judge: Hon. Richard Seeborg<br>Date:　October 24, 2007<br>Time:　9:30 A.M.<br><br>Courtroom 4, 5th Floor |

## INTRODUCTION AND PROCEDURAL FACTS

Alexey Stepanov is a 42-year-old native of Russia and citizen of Israel, currently residing in Sunnyvale, California. (Compl. ¶¶ 2, 9; Exhibit 1, "Declaration Alexey Stepanov" at ¶ 1). On June 17, 2005, Plaintiff's Employer KLA-Tencor filed an I-140 immigrant worker petition on his behalf as an alien with an advanced degree. (Exhibit 1, Stepanov Decl. at ¶ 3; Exhibit 2 "USCIS Approval Notice I-140 Petition showing a Receipt Date of June 17, 2005)  The petition was

based on substitution of Mr. Stepanov in the Employer's previously approved foreign labor certification application, bearing a priority date of August 17, 2001. (Ex. 1 Stepanov Decl. at ¶ 3; Exhibit 2.) Plaintiff concurrently filed an I-485 Application for Adjustment based on the I-140 petition. (Exhibit 3 "USCIS Receipt Notice I-485 Application"). On August 17, 2005, the California Service Center approved the I-140 petition and an immigrant visa became available to Plaintiff as of that date. (Exhibit 2).  After Plaintiff's I-485 application had been pending for approximately one year, Mr. Stepanov, personally and through counsel, began to inquire about the status of his application.  His inquiries only produced the response that his security clearance/name check had not been completed (Exhibit 1 Stepanov Decl at  ¶5 and Status Inquiries collectively Exhibit 4.)  On March 2, 2007, his file was transferred from the California Service Center to the Nebraska Service Center.  (Exhibit 5 "USCIS e-mail to Alexey Stepanov"). It remains at the Nebraska Service under what USCIS describes as "standard processing." (Exhibit 6 " Case Status Report 09.19.2007).  There appear to be no law enforcement issues with respect to Mr. Stepanov's eligibility for the benefit sought (Exhibit 7 " FBI Fingerprint Report"; Exhibit 8 "California Department of Justice Report).  Likewise, the FBI has stated that it has not located a file on Mr. Stepanov. (Exhibit 9 "FBI Response to FOIA Request") At this time, the FBI name check appears to be the only reason for the delay in adjudication of Plaintiff's I-485 application. On May 9, 2007, Plaintiff filed this action seeking an order directing USCIS to adjudicate his application for adjustment to permanent residency.

Defendants filed an Answer to the Complaint on July 10, 2007 admitting material facts relating to the I-140 petition, filing of the adjustment application and its current pending status. They denied other allegations and raised affirmative defenses under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In an Order dated July 31, 2007 this Court rejected Defendants' implied motion to dismiss under the affirmatives defenses raised and directed the parties to file cross motions for summary judgment.  Plaintiff's I-485 application has now remained pending for two years and three months from the date of filing.

Plaintiff seeks summary judgment in his mandamus action for the Court to enter an order requiring Defendants to expeditiously complete the name check clearance on Plaintiff's

1 application for adjustment of status and requiring the U.S. Citizenship and Immigration Services
2 (USCIS) to process the case to conclusion. In addition, Plaintiff prays that the Court grant such
3 other relief that may be just and appropriate, including costs, expenses, and reasonable attorney's
4 fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1991).

## ARGUMENT

Summary judgment is proper when the pleadings, affidavits, and other papers filed in the action show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party for summary judgment bears the burden of identifying those portions of the pleadings, affidavits and other papers before the court that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

### I. DEFENDANTS HAVE A DUTY TO PROCESS PLAINTIFF'S ADJUSTMENT APPLICATION IN A REASONABLE TIME

Plaintiff is entitled to relief under 28 U.S.C. § 1361 and the Administrative Procedures Act as a matter of law. Under 28 U.S.C. § 1361, district courts have original jurisdiction to compel an officer of the United States to perform his duty. Jurisdiction exists to challenge a U.S. official's authority to "take or fail to take an action as opposed to a decision taken within … discretion." *Patel v. Reno*, 134 F3d 929, 933 (9th Cir. 1997). It is well settled that while the *outcome* in adjudicating an adjustment application may be discretionary, the duty to process it is not. *Wu v. Chertoff* C-06-07880 SI 2007 U.S. Dist. LEXIS 33816 at *8 (N.D. Cal. April 25, 2007); Razaq v. Poulos C 06-2461 WDB 2007 U.S. Dist. LEXIS 770 AT *7 (N.D. Cal. Jan. 8, 2007). As a matter of law, the USCIS has a non-discretionary duty to process Plaintiff's application for adjustment to permanent residency within a reasonable time. Further, district courts have jurisdiction to determine whether processing delays are reasonable. *Qiu v.* Chertoff, 2007 WL 1831130, *2 n.3 (N.D. Cal. June 25, 2007) (citations omitted); *Yu v. Brown* 36 F.Supp.2d 922, 931-932 (D.N.M. 1999). As a matter of law, the duty to adjudicate includes a duty to adjudicate within a reasonable time; to find otherwise would render the right to adjudication meaningless.

1    Similarly, Plaintiff is entitled to relief under the Administrative Procedures Act (APA).
The APA provides that federal courts can "compel agency action unlawfully withheld or
unreasonably delayed." 5 U.S.C. § 706(1). The APA imposes a clear duty on Defendants to act
on Plaintiff's application and authorizes federal courts to compel the defendant agency to
perform its duty. Administrative agencies such as USCIS do not have discretion to "avoid
discharging the duties that Congress intended them to perform." *Yu v. Brown* 36 F. Supp. 2d at
931. Further, a general timing provision for agencies is provided within the APA at U.S.C. §
555(b), which states that agency action should be concluded within a reasonable time. *See
Forest Guardians v. Babbit* 174 F.3d 1178 (10th Cir. 1999). As this Court has noted, no fewer
than ten judges in this district have found that jurisdiction exists to compel defendant agencies to
process an adjustment application, such as the plaintiff's, within a reasonable time. (Order July
31, 2007 at 2)

**PLAINTIFF'S ADJUSTMENT APPLICATION PRESENTS NO FACTS TO
EXCUSE DEFENDANTS' DELAY IN PROCESSING HIS APPLICATION**

Where the governing statute specifies no deadline for a governmental act, the Ninth
Circuit has considered the following six factors, known as the "TRAC factors" to help evaluate
whether a government agency has unreasonably delayed concluding a matter before it, in
violation of the APA: "(1) the time agencies take to make the decision must be governed by a
"rule of reason" (2) where Congress has provided a timetable or other indication of the speed
with which it expects the agency to proceed in the enabling statute, that statutory scheme may
supply content for this rule of reason, (3) delays that might be reasonable in the sphere of
economic regulation are less tolerable when human health and welfare are at stake, (4) the court
should consider the effect of expediting delayed action on agency activities of a higher or
competing priority, (5) the court should take into account the nature and extent of the interests
prejudiced by the delay, and (6) the court need not "find any impropriety lurking behind agency
lassitude in order to hold that agency action is unreasonably delayed." *Razaq v. Poulos*, No. 06-
2461, U.S. Dist. LEXIS 770 (N.D. Cal. 2007) quoting *Indep. Mining Co., Inc. v. Babbitt* 105 F.
3d 502, n. 7 (9th Cir. 1997). Originally formulated to determine eligibility for relief under the

APA, TRAC factor analysis has been used regardless of whether relief is sought under the Mandamus Act or under the APA. *Ibrahim v. Chertoff* No. 06-2071-L May 25, 2007 U.S. Dist. LEXIS 38352.

In the present case, applying the TRAC analysis leads incontrovertibly to the conclusion that Defendants' delay of more than two years in adjudicating Plaintiff's adjustment application is unreasonable as a matter of law. The Court may look to the agency's usual processing time for the type of application at issue to determine reasonableness of delay. *Luo v. Coultice* 178 F. Supp.2d 1135 (C.D. Cal. 2001). The September 15, 2007 USCIS Nebraska Service Center Processing Dates Report shows that the Center is currently processing adjustment applications received on December 21, 2006. (Exhibit 10 "NSC Processing Dates Report"). Plaintiff's application was filed on June 17, 2005 and an immigrant visa became available to him when the underlying I-140 petition was approved on August 17, 2005. Where Defendant USCIS states that it is processing applications received 18 months after Plaintiff's application, its unexplained delay in processing Mr. Stepanov's application is clearly unreasonable under its own standards. Further, the Court may consider "Congressional expectation" in determining the reasonableness of delay. In "The Immigration Services and Infrastructure Improvements Act of 2000" Congress stated its sense that the processing of an immigration benefit application should be completed no later than 180 days after initial application. 8 U.S.C. § 1571. The anticipated 180 day time line for the adjudication of adjustment of status applications was also incorporated into Section 106 ( c ) of "The American Competitiveness in the Twenty-First Century Act of 2001" permitting an applicant for adjustment if status to change employers after an adjustment application has remained pending more than 180 days. 8 U.S.C. § 1154(j).

Even viewing facts in the light most favorable to Defendants', the Court should find that Defendants' delay in adjudicating Plaintiff's application, without specific explanation for such delay, is unreasonable as a matter of law. Defendant USCIS stated in its April 25, 2006 Fact Sheet that initial responses take about two weeks and no match is found in 80 percent of the cases. Of the remaining 20 percent, most are resolved within six months. Less than one percent remain pending after six months. (Exhibit 11 "Immigration Security Checks – How And Why

The Process Works"). Defendants have offered no information concerning why processing Mr. Stepanov's application has deviated so far from the norm. They have provided no information about what processing has taken place since June 17, 2005, beyond the transfer of the application from one service center to another. No additional information has been requested from the Plaintiff and nothing distinguishes his application as problematic. Where processing of Plaintiff's application has been suspended on a name check clearance and Defendants have themselves stated that this procedure is ordinarily concluded within six months, the delay in completing processing of Plaintiff's application without an explanation that is particularized to the Plaintiff is unreasonable as a matter of law.

Further, the Court should consider the complexity of the matter in determining what constitutes a reasonable time for adjudication. Again, Plaintiff's case does not present itself as complex. Defendants have not challenged Plaintiff's eligibility for permanent residence in the United States. They offered no evidence to show that Plaintiff's application is a particularly difficult matter, either by way of presenting issues which require further investigation or by Plaintiff's failure to provide, or delay in providing, all the information necessary to establish his eligibility for the benefit sought. *Compare Razaq v. Poulos* 2007 WL 61884 (N.D. Cal. Jan. 8, 2007), *Saleh v. Ridge* 367 F. Supp. 2d at 511-512 (S.D.N.Y. 2005); *Bartoloni v. Ashcroft* 226 F. Supp. 2d 350, 354 (D. Conn. 2002). Plaintiff's application presents no possible criminal issues (Exhibits 7, 8, 9.) Plaintiff has applied for and been granted numerous nonimmigrant visas and has continuously maintained lawful status in the United States and has been granted admission to the United States on his return from periodic travel abroad. (Exhibit 1, Stepanov Decl. at ¶ 3) In short, the record provides abundant evidence that his case falls squarely within the profile of routine name check security clearances, to be completed within 180 days. Defendants have offered no evidence to explain why the required clearance for Plaintiff's application has so far exceeded this norm. Therefore Defendants' delay in adjudicating Plaintiff's application is unreasonable as a matter of law and Plaintiff is entitled to relief.

In acknowledging that delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, Courts in this District

1 have properly recognized that an adjustment applicant suffers significant restrictions on his basic
2 welfare when he is delayed in obtaining a decision on an application for permanent residency.
3 An inability to obtain permanent resident status affects important rights including, but not limited
4 to, the ability to travel abroad freely, to be employed without restriction, and to accrue time as a
5 lawful permanent resident in order to become eligible to apply for citizenship. *Singh v. Still*
6 2007 06-2458 EMV 2007 U.S. Dist. LEXIS 16334 January 8, 2007. *See also Ngwanyia v.*
7 *Ashcroft* 302 F. Supp. 2d 1076, 1079-80 (D. Minn. 2004). In the instant case, Plaintiff has been
8 compelled to apply for multiple advance parole travel documents and employment authorization
9 documents over the 27 months that his application has been pending and has lost valuable time
10 as a lawful permanent resident during which he would have been working toward eligibility to
11 apply for naturalization. (Compl. at ¶ 14)
12     Plaintiff readily concedes that national security is an important competing priority.
13 However, the mere invocation of national security is insufficient to make Defendants' two year-
14 plus delay reasonable per se. *Singh v. Still* No. 06-2458 EMC 2007 U.S. Dist. LEXIS 16334
15 January 8, 2007 at *16. In the present case, Defendants have offered no facts whatsoever to
16 suggest that Plaintiff's application presents national security issues. Further, the USCIS in its
17 Ombudsman's 2007 Annual Report to Congress has questioned the value of the FBI name check
18 process. "The Ombudsman agrees with the assessment of many case workers and supervisors at
19 USCIS field offices and service centers that the FBI name check process has limited value to
20 public safety or national security, especially because in almost every case the applicant is in the
21 United States during the name check process, living or working without restriction. …Delays in
22 the name check process actually prolong an individual's presence in the United States while the
23 check is pending. In this sense, the current USCIS name check policy may increase the risk to
24 national security by extending the time a potential criminal or terrorist remains in the country."
25 http://www.dhs.gov/xlibrary/assets/CISOMB_Annual_Report_2007.pdf. See USCIS
26 Ombudsman's 2007 Report to Congress at 40.
27 Accordingly, while the Court should balance Plaintiff's right to the timely processing of his
28 adjustment application against national security issues, nothing in the record shows that Plaintiff

specifically poses a risk to national security or how national security interests are served by prolonged delay in the processing of his application.

Further, Defendants cannot avoid their duty to complete adjudication of the Plaintiff's application because of limited resources. "[D]elays of a significant magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Yu* F. Supp. 2d at 934 (citations omitted); see also *Forest Guardians v. Babbit* 164 F.3d 1261, 1273-1274 (10th Cir. 1998) (once the court determines that there has been an unreasonable delay, the court is required to issue a mandatory injunction and cannot consider the agency's lack of resources in fashioning a remedy.) Additionally, even if the delay in processing is entirely attributable to backlogs at the FBI, Defendant USCIS cannot shift the responsibility for the delay to the FBI where it has contracted out the task of conducting security and background checks to the FBI as a third party. *Paunescu v. INS* 76 F. Supp. 2d 896, 903 n.2. (N.D. Ill. 1999)

Defendants have a plain duty to adjudicate Plaintiff's I-485 application within a reasonable time. *Aboushaban v. Mueller*, No. 06-01280 BZ, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006). What constitutes a reasonable time is a combination of quantitative and qualitative factors. A court in this District has found that a more than two year delay was unreasonable as a matter of law. *Gelfer v. Chertoff* 2007 WL 902382 at *2. Other courts have found 6-24 month delays in processing adjustment of status applications to be unreasonable. *Galvez v. Howerton,* 503 F. Supp. 35, 39 (C.D. Cal. 1980*); Paunescu,* 76 F. Supp. 2d at 901-02*; Agbemaple* 1998 WL 292441*; Yu,* 36 F. Supp. 2d at 931-32.

While quantitative measures are a factor to be considered, reasonableness of delay is to be determined on a case-by-case basis, depending on the complexity of the matter or whether the plaintiff has contributed to the delay. However, nothing in the record shows why Plaintiff's adjustment application might be complex or otherwise justify a delay of more than two years in processing. Beyond the transfer of Plaintiff's application from the California to the Nebraska Service Center, nothing in the record shows that anything has been done to advance the clearance process since June 2005. Delay in completing the name check on Plaintiff's application has far

exceeded normative processing times and yet Defendants have offered no explanation whatsoever as to why this should be so. Responsibility for the delay rests entirely with Defendants. They have not shown that they have made reasonable efforts to complete his I-485 application. The Mandamus Act and the APA provide a check on USCIS for its failure to fulfill its duty to the plaintiff, namely to adjudicate his adjustment application within a reasonable time.

It is an undisputed fact that Plaintiff's I-485 application has been pending for two years and three months. It is undisputed that it is the expectation of Congress that adjustment applications shall be completed within 180 days from submittal. Informational material published by Defendant USCIS in this states that it is normative to complete the vast majority of name checks within a few weeks of submittal and all but the smallest percentage, within six months of submittal. It is an undisputed fact that the only issue preventing Defendants from completing adjudication of Plaintiff's I-485 application is completion of his name check. In the face of these undisputed facts, Defendants have provided no evidence whatsoever to explain the delay in processing Plaintiff's application. Accordingly, this Court should find that, as a matter of law, Defendants have delayed unreasonably in completing Plaintiff's application. The Plaintiff has been adversely affected by the delay in adjudication of his I-485 application despite the fact that he has met the statutory requirements for eligibility. He has been damaged by being deprived of a decision for two years and three months; by being unable to plan or pursue a course of action in the United States because his adjustment application remains pending, and by being compelled to repeatedly apply and pay for extensions of his employment authorization documents and travel documents.

Plaintiff has a clear right to the relief requested and Defendants have a clear duty to adjudicate his application for adjustment of status in a reasonable time. No other adequate remedy is available. Relief under the Mandamus Act and the APA is therefore warranted. The evidence considered in the light most favorable to the government, demonstrates, as a matter of law, that Defendants have unreasonably delayed in processing Plaintiff's application for adjustment of status.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant summary judgment in favor of the Plaintiff and that a writ of mandamus be issued against all Defendants.

Dated: September 19, 2007                                          Respectfully submitted,

/s/
Judith Michaels Morrow
Attorney for Plaintiff